### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS
### AT WICHITA, KANSAS

SHIRLEY HOFFMAN

        Plaintiff,

-vs-                                                Case No.

BRENNTAG SOUTHWEST INC.,

        Defendant.

### COMPLAINT

Plaintiff, through counsel Jay Sizemore and J. Corey Sucher of Bull Attorneys, P.A. and for her claims against Defendant, alleges and states:

### *GENERAL ALLEGATIONS*

1. Plaintiff is a citizen of the state of Kansas.

2. Defendant is a Texas corporation, incorporated under the laws of the State of Texas, and with its principal place of business located at 610 Fisher Road, Longview, Texas 75604, a state other than Kansas, where Plaintiff is a citizen. Defendant may be served with process through its registered agent, The Corporation Company, Inc., 112 S.W. 7th Street, Suite 3C, Topeka, KS 66603.

3. This Court has proper venue and jurisdiction over the persons and subject matter.

4. This action is brought pursuant to 28 U.S.C. Section 1332(a) on the basis of diversity of citizenship and the matter in controversy exceeds the sum of $75,000.00, exclusive of interests and costs.

5. Bryan Phillip (hereinafter, "Phillip") was operating a hazardous material transport truck in the course and scope of his employment with Defendant on or about October 4, 2021, and

for all allegations brought herein, the actions and/or omissions of Phillip are the actions and/or omissions of Defendant under the doctrines of respondeat superior and vicarious liability.

6. Phillip operated the hazardous material transport truck, which is a commercial motor vehicle, as an employee of Defendant.  Defendant previously applied for motor carrier authority through the United States Department of Transportation to operate as a motor carrier under DOT number 82753.

7. The actions and/or omissions of Defendant, as set forth in this Complaint, proximately caused serious permanent injuries and damages to Plaintiff.

8. Upon information and belief, Defendant did not adequately train or supervise Phillip through proper training, and did not use any defensive driving training manual, nor did they use any formal classroom orientation to teach Phillip hazard perception skills, accident-avoidance skills, and/or defensive driving skills.

9. Upon information and belief, Defendant required Phillip to follow an "on-time" delivery protocol providing financial incentives for Phillip to drive fatigued, in violation of the maximum hours rules of service because he was penalized if he did not make his deliveries on-time.

10. Defendant's drivers have a history of driving violations while operating Defendant's commercial motor vehicles.  The violations include speeding, failure to maintain lane, using a cell phone while driving, operating a commercial motor vehicle without a commercial license, brake violations, and other various violations, as evidenced by the CSA BASICs (Behavior Analysis and Safety Improvement Categories) Investigative Results.

11. Defendant, according to its Company Snapshot from the Safer System FMCSA website (attached as Exhibit A), establishes by clear and convincing evidence that the motor carrier, as of 2020, had 92 drivers and 99 power units. This same Company Snapshot establishes that the Defendant motor carrier had 7 crashes in the 24 months preceding the date of 10-24-21, with 4 injuries and 3 tows, all of which were federally recordable accidents that must be filed with the DOT.

**Crashes reported to FMCSA by states for 24 months prior to: 10/24/2021**

Note: Crashes listed represent a motor carrier's involvement in reportable crashes, without any determination as to responsibility.

| Type | Crashes: Fatal | Injury | Tow | Total |
|---|---|---|---|---|
| Crashes | 0 | 4 | 3 | 7 |

12. The SMS violation summary regarding Defendant motor carrier from the same website indicates that it has a significant number of violations of the Federal Motor Carrier Safety Regulations (FMCSR) and of the CSA basics. The violation categories most frequently found are for unsafe driving, hours-of-service compliance, drugs and alcohol, and hazardous materials compliance.

13. More recent documents from the same website indicate a continuing habit and organization business routine of violating the FMCSR and CSA BASICs. See screenshot below:

| Violations | Description | # Violations | # OOS Violations | Violation Severity Weight | BASIC |
|---|---|---|---|---|---|
| 392.2C | Failure to obey traffic control device | 1 | 0 | 5 | Unsafe Driving |
| 392.2-SLLS2 | State/Local Laws - Speeding 6-10 miles per hour over the speed limit. | 1 | 0 | 4 | Unsafe Driving |
| 395.22H4 | Driver failed to maintain supply of blank drivers records of duty status graph-grids | 1 | 0 | 1 | HOS Compliance |
| 395.24C2III | Driver failed to manually add shipping document number | 2 | 0 | 1 | HOS Compliance |
| 395.30B1 | Driver failed to certify the accuracy of the information gathered by the ELD | 1 | 0 | 1 | HOS Compliance |
| 390.3(e) | Prohibited from performing safety sensitive functions per 382.501(a) in the Drug and Alcohol Clearinghouse. | 1 | 1 | 10 | Drugs/Alcohol |
| 172.203(a) | "DOT-SP" or special permit number not entered on shipping paper | 1 | 0 | 3 | HM Compliance |
| 172.334 | Prohibited ID number marking | 1 | 1 | 5 | HM Compliance |
| 172.402(a) | No label for subsidiary hazard | 1 | 0 | 5 | HM Compliance |
| 172.502(a)(1) | Prohibited placarding | 1 | 0 | 5 | HM Compliance |
| 173.25(a) | Failed to meet overpack conditions | 1 | 0 | 5 | HM Compliance |
| 177.817(e) | Shipping paper accessibility | 1 | 0 | 3 | HM Compliance |
| 177.834(j) | Manholes and valves not closed or leak free | 1 | 1 | 4 | HM Compliance |
| 180.407(a) | Failure to test / inspection a specification cargo tank when due | 1 | 0 | 7 | HM Compliance |

3

14. Additionally, the summary of violations section from the same SMS Company Snapshot discloses that the company has violations for dangerous driving (49 CFR 392.2), unsafe driving via speeding in violation of 49 CFR 392.2 – SLLS2, as well as hours-of-service violations (49 CFR 395.2 2H and 49 CFR 395.24(C)(2)). The allegations in this paragraph and in the preceding paragraphs establish that Defendant motor carrier has a habit and routine practice that is admissible pursuant to FRE 406.

15. On or about October 4, 2021, Plaintiff was operating a motor vehicle westbound on U.S. Highway 56 / KS-96 in Rice County, Kansas and, after slowing, was making a left turn into the Rice County Sanitary Landfill, when Defendant's driver, Phillip, while operating the above-referenced commercial motor vehicle of Defendant's and hauling hazardous material at a high rate of speed, attempts to pass Plaintiff on the left and while traveling over a bridge and, while doing so, slams into Plaintiff's vehicle while it is turning left, thereby proximately causing a collision (hereinafter, "the collision") that forced Plaintiff's vehicle off the roadway, as well as serious and permanent injuries and damages to Plaintiff.

16. Plaintiff was transporting refuse and driving to the Rice County Landfill. Had Phillip been paying attention and/or been properly trained by the Defendant he would not have attempted to pass plaintiff on a bridge and at the turn to Rice County Sanitary Landfill entrance.

17. Defendant's driver ignored highly visible large green signs advising drivers to be aware vehicles will be turning left to the Rice County Sanitary Landfill (see Google Maps photo below).



18. Although Phillip and Plaintiff were traveling westbound on US highway 56, the Rice County Sheriff's Office investigating officer determined the point area of impact was in the eastbound lane of US 56, and Phillip had no valid reason to pass at an intersection and/or on a bridge (see Google Maps photos below of the area of the collision).







Case 6:22-cv-01132-HLT-KGG   Document 1   Filed 06/03/22   Page 6 of 14

19. At the time of the collision and at all times herein relevant, Phillip was operating a hazardous material transport truck registered in Texas, bearing VIN number: 1FUJHLDR5MLMR3534, as an employee of Defendant and while acting within the course and scope of his employment with Defendant.

20. The commercial motor vehicle operated by Phillip was owned and/or operated and/or leased by Defendant and was dispatched, supervised, maintained, monitored, operated, and controlled by Defendant.

21. Phillip was hired, retained, supervised, and trained by Defendant.

22. At the time of the collision, Defendant was operating a fleet of commercial motor vehicles, trucks, and other vehicles as a motor carrier as defined by the Federal Motor Carrier Safety Regulations (FMCSR).

23. At all times material hereto, Defendant and Phillip were operating under authority granted by the DOT under license number 82753.

24. 49 C.F.R. § 390.3(e) (1) & (2) provide that every employee shall be instructed regarding and shall comply with all applicable regulations contained in the FMCSR.

25. 49 CFR § 390.5 defines "motor carrier" as, "[A] for-hire motor carrier or a private motor carrier.  The term includes a motor carrier's agents, officers and representatives, as well as employees responsible for hiring, supervising, training, assigning, or dispatching of drivers (including Phillip) . . . ."

26. 49 C.F.R. § 392.2 provides that every commercial motor vehicle must be operated in accordance with the laws, ordinances, and regulations of the jurisdiction in which it is being operated. However, if a regulation of the Federal Motor Carrier Safety Administration imposes a higher standard of care than that law, ordinance or regulation,

the Federal Motor Carrier Safety Administration regulation must be complied with.

27. Defendant was at all material times a "motor carrier," as well as an "employer" of Phillip, as such terms are defined in 49 CFR § 390.5.

28. Phillip was at all material times an "employee" of Defendant as defined in 49 CFR § 390.5.

29. 49 U.S.C. § 14704(a)(2) provides that "A carrier . . . is liable for damages sustained by a person as a result of an action or omission of that carrier. . . in violation of this part."

30. 49 U.S.C. § 14101(a) provides that "a motor carrier shall provide safe and adequate service, equipment and facilities," and Defendant and Phillip negligently and wantonly failed to provide safe and adequate service, which proximately caused the injuries and damages to Plaintiff.

31. The FMSCR are located at 49 CFR § 390 *et seq.*  40 CFR § 391.1(a) and (b) state, "(a) The rules in this part establish minimum qualifications for persons who drive commercial motor vehicles, as, for, or on behalf of motor carriers.  The rules in this part also establish minimum duties of motor carriers with respect to the qualification of their drivers.  (b) An individual who meets the definition of both a motor carrier and a driver employed by that motor carrier must comply with both the rules in this part that apply to motor carriers and the rules in this part that apply to drivers."  Per these sections, the FMCSR set forth the applicable minimum industry standards of care, including minimum qualifications and duties for drivers.

32. The allegations contained in this Complaint regarding the FMCSR are set forth to establish that Defendant failed to comply with the minimum industry standards of care per the FMCSR, and in order to establish negligence on the part of Defendant; Plaintiff does not allege any private causes of action for violations of the FMCSR.

## NEGLIGENT AND/OR WANTON ACTIONS AND/OR OMISSIONS OF DEFENDANT (VIA RESPONDEAT SUPERIOR/VICARIOUS LIABILITY)

33. The actions and/or omissions of Phillip are the actions and/or omissions of Defendant under the doctrines of respondeat superior and vicarious liability, are, upon information and belief, negligent and/or wanton, and include, but are not limited to:

A)   Failing to yield right of way;

B)   Following too closely;

C)   Speeding;

D)   Failing to avoid or take evasive action;

E)   Illegal passing at an intersection;

F)   Improper lane change;

G)   Improper Passing;

H)   Inattentive operation of a commercial motor vehicle;

I)   Failing to keep a proper lookout;

J)   Speeding too fast for the present existing conditions of traffic;

K)   Failing to warn;

L)   Careless driving;

M)   Reckless driving;

N)   Failing to exercise ordinary and reasonable care;

O)   Putting on-time deliveries for Defendant, and therefore profits, ahead of safety;

P)   Upon Information and belief operation of a commercial motor vehicle while using a cellular phone, GPS, PDA, mapping, or other message device;

Q) Upon Information and belief, driving while using Google maps, Apple Maps, or other cellular mapping navigational software program that served to pull Phillips's attention away from the traveled roadway;

R) Failing to meet the minimum duties and industry standards of care per 49 CFR § 381 through 399;

S) Failing to meet the minimum duties and industry standards of care per 49 CFR § 392.3 by operating a commercial motor vehicle while fatigued and/or while alertness is impaired;

T) Failing to meet the minimum duties and industry standards of care per 49 CFR § 391.11(a) by operating a commercial motor vehicle while not properly qualified;

U) Failing to meet the minimum duties and industry standards of care per 49 CFR § 383.110, 382.111, and 383.113 by operating a commercial motor vehicle without possessing and/or having demonstrated the safe driving skills and/or knowledge required;

V) Upon information and belief, operating a commercial motor vehicle while using a wireless communications device to write (i.e., type), send, or read a written communication including, but not limited to, a text message, instant message, and/or email;

W) Upon information and belief, failing to comply with the requirements and recommendations of the DOT and FMCSA regarding using the following safety protocols: failing to perform post-accident investigations; failing to set up and utilize a Safety Review Board; failing to train Phillip in defensive driving, hazard perception, and accident awareness techniques;

X) Failing to meet and follow the maximum hours-of-services limits prescribed by law under 49 C.F.R. 395.1 *et. seq.*;

Y) Failing to maintain copies of Phillip's logs in their accurate and complete unaltered manner as required by 49 C.F.R. 395.3 *et. seq.*;

Z) Failing to follow the oath to provide Phillip orientation, ongoing training, and monitoring his safety compliance, as required by the motor carrier in order to obtain driving authority pursuant to the request for authority under DOT From OP-1;

AA) Failing to meet the minimum duties and industry standards of care per 49 CFR § 397.1 et. seq., entitled Transportation of Hazardous Materials; driving and parking rules by operating a commercial motor vehicle while not properly qualified;

BB) Negligence and negligence per se for violations of laws, statutes, ordinances, and/or regulations of the State of Kansas; and/or

CC) Other actions and/or omissions that will be supplemented after the receipt of full and complete discovery.

### *NEGLIGENT HIRING, TRAINING, SUPERVISION AND RETENTION CLAIMS AGAINST DEFENDANT*

34. Additionally, upon information and belief, Defendant's separate actions and/or omissions also proximately caused the collision, as well as Plaintiff's injuries and damages, and are negligent for the following reasons:

    A) Failing to meet the minimum duties and industry standards of care regarding hiring, training, supervising, and retention per 49 CFR § 381 through 399;

    B) Negligent hiring, training, supervision, and/or retention of Phillip;

    C) Failing to adequately warn and/or suspend Phillip prior to the collision;

    D) Failing to terminate Phillip prior to the collision;

E)  Failing to train Phillip in proper defensive driving skills prior to the collision;

F)  Failing to reprimand Phillip prior to the collision;

G)  Failing to train and retrain Phillip prior to the collision;

H)  Failing to train Phillip in proper hazard communication signals, hazard perception, and other safe operating protocols utilizing industry accepted commercial training materials from companies such as Smith System, J.J. Keller & Associates, Inc., and/or others;

I)  Failing to have adequate, based on industry standards, safety management protocols in place;

J)  Failing to properly create and implement a formal safety program that would require, in part, Phillip to be comprehensively tested to determine comprehension understanding of defensive driving skills training received;

K)  Failing to test Phillip for alcohol and drug consumption as needed prior to the collision;

L)  Hiring unfit employees and/or agents, which it knew or should have known posed an undue risk of harm to Plaintiff and others, and failing to properly train, supervise, and monitor them, including, but not limited to, Phillip;

M)  Retaining employees and/or agents who are not performing their jobs properly or adequately, including, but not limited to, Phillip;

N)  Failing to use reasonable care in the hiring, selecting, training, monitoring, and retention of its employees and/or agents, including, but not limited to, Phillip;

O)  Failing to perform its duty of reasonable care to third parties, including, but not limited to, Plaintiff; and/or

P) Ratifying all conduct of Phillip and/or his supervisory and/or hiring personnel, either expressly and/or impliedly.

### *INJURIES AND DAMAGES TO PLAINTIFF*

35. As a proximate result of the negligent and/or wanton actions and omissions and/or omissions of Defendant and Phillip, as aforesaid, Plaintiff received injuries to her body, including, but not limited to: her head, face, right foot, left shoulder, back, chest, knee, hip, cervical spine, thoracic spine, lumbar spine, left shoulder, left elbow, left wrist, left him, and right leg. She suffered a traumatic brain injury (TBI) and was diagnosed with a subarachnoid hemorrhage within in the right frontal lobe of her brain. Plaintiff underwent emergency room care, follow-up care, physical therapy, injections, MRI imaging, and lumbar spine surgery (laminectomy with decompression and foraminotomy at L3-4, L4-5, and L5-S1). Plaintiff may have had aggravation to a pre-existing condition(s), was otherwise injured, and has been damaged with pain and suffering, mental anguish, loss of time, loss of enjoyment of life, medical expenses, economic loss, permanent disfigurement, and permanent disability. In the future Plaintiff will suffer with pain and suffering, mental anguish, loss of time, loss of enjoyment of life, medical expenses, economic loss, permanent disfigurement, and permanent disability. For the aforementioned damages, Plaintiff has been damaged in an amount in excess of $75,000.00.

Plaintiff prays for a judgment against Defendant in an amount in excess of $75,000.00, for costs herein, and for such other and further relief as the Court deems just and equitable.

Respectfully submitted,

**BULL ATTORNEYS, P.A.**

*/s/ Jay Sizemore*
Jay Sizemore, #20395
*/s/ J. Corey Sucher*
J. Corey Sucher, #27789
10111 E. 21st Street N., Suite 204
Wichita, Kansas 67206
Ph: 316-684-4400 / Fax: 316-684-4405
jay@bullattorney.com
corey@bullattorneys.com
*Attorneys for Plaintiff*

## **DEMAND FOR PRETRIAL CONFERENCE AND JURY TRIAL**

Plaintiff demands a pretrial conference and trial by jury in this matter.

*/s/ Jay Sizemore*
Jay Sizemore #20395

## **DESIGNATION FOR PLACE OF TRIAL**

Plaintiff designates Wichita, Kansas as the place for trial in this matter.

*/s/ Jay Sizemore*
Jay Sizemore #20395